FILED
United States Court of Appeals
Tenth Circuit

March 11, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SCOTTSDALE INSURANCE
COMPANY,

      Plaintiff-Counter-
      Defendant-Appellee,

v.

MICHAEL S. TOLLIVER;
SANDRA L. TOLLIVER,

      Defendants-Counter-
      Claimants-Appellants.

No. 07-5083
(D.C. No. 04-CV-227-CVE-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

---

Michael S. and Sandra L. Tolliver appeal from a judgment following a jury

verdict in favor of Scottsdale Insurance Company on its claim for cancellation of

an insurance policy and against the Tollivers on their claim for breach of contract.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Tollivers also appeal the district court's grant of summary judgment in favor of Scottsdale on their bad faith claim. We affirm in part, reverse in part, and remand for a new trial.

## *Factual and Procedural Background*

Scottsdale issued a dwelling policy (Policy) to the Tollivers on September 24, 2002, to insure a residential rental property they owned in Tulsa, Oklahoma (Property). The application for insurance requested disclosure of "ANY LOSSES, WHETHER OR NOT PAID BY INSURANCE, DURING THE LAST 3 YEARS, AT THIS OR AT ANY OTHER LOCATION." Aplt. App., Vol. I at 107. The application disclosed one $5,000 hail damage claim in 2001. Mrs. Tolliver signed the application, attesting that the information she provided was "true, complete and correct to the best of [her] knowledge and belief." *Id.* A fire occurred at the Property on March 29, 2003, and the Tollivers submitted a claim for the loss to Scottsdale. Scottsdale denied the claim based on misrepresentations in the application, after determining that the Tollivers had over $200,000 in previous claims in the past three years that were not disclosed in the application, including two total-loss fire claims and a substantial theft claim.

Scottsdale filed a declaratory judgment action against the Tollivers, seeking to avoid payment of their claim and asking for rescission of the Policy.

Scottsdale asserted its claims under Okla. Stat. tit. 36, § 3609.[1]  The Tollivers

filed counterclaims for breach of contract and bad faith.  Scottsdale moved for

summary judgment on all claims, but the district court granted summary judgment

only on the Tollivers' bad faith claim.

Prior to trial, the parties disagreed regarding the proof required under

§ 3609 to prevent a recovery under a policy.  Consequently, the district court

certified a question to the Oklahoma Supreme Court, asking whether Oklahoma

law requires a finding that the insured intended to deceive before a

misrepresentation, an omission, or an incorrect statement in an application can

avoid the policy under § 3609.  The Oklahoma Supreme Court declined to answer

the certified question, holding that controlling precedent required a finding of

---

[1]     Okla. Stat. tit. 36, § 3609 provides, in relevant part:

A.  All statements and descriptions in any application for an
insurance policy or in negotiations therefor, by or in behalf of the
insured, shall be deemed to be representations and not warranties.
Misrepresentations, omissions, concealment of facts, and incorrect
statements shall not prevent a recovery under the policy unless:

1.  Fraudulent; or

2.  Material either to the acceptance of the risk, or to the hazard
assumed by the insurer; or

3.  The insurer in good faith would either not have issued the policy,
or would not have issued a policy in as large an amount, or would not
have provided coverage with respect to the hazard resulting in the
loss, if the true facts had been made known to the insurer as required
either by the application for the policy or otherwise.

intent to deceive under § 3609. *Scottsdale Ins. Co. v. Tolliver*, 127 P.3d 611, 614-15 (Okla. 2005). The Oklahoma Supreme Court also stated that the question of the insured's intent to deceive under § 3609 is for the jury where the evidence is conflicting. *Id.* at 614. The district court subsequently held sua sponte that Scottsdale's claim was a legal claim for cancellation of the policy, rather than an equitable claim for rescission. The case was therefore tried to a jury.

At the close of Scottsdale's case, and again after both parties rested, the Tollivers moved for judgment as a matter of law on two grounds: (1) that the evidence of intent to deceive was insufficient to satisfy a clear and convincing standard of proof; and (2) that the evidence failed to show that Scottsdale had returned to the Tollivers the premium they paid under the Policy. At each stage, the district court denied the motion on the first ground and took the second ground under advisement. Over the Tollivers' objection, the court ultimately instructed the jury that Scottsdale's burden of proof on its cancellation claim, including on the issue of intent to deceive, was "BY A PREPONDERANCE OR THE GREATER WEIGHT OF THE EVIDENCE." Aplt. App., Vol. I at 388. After the jury returned a verdict for Scottsdale, the district court issued a written order denying the Tollivers' motion for judgment as a matter of law based on Scottsdale's failure to return the premium. The court then entered judgment in favor of Scottsdale and the Tollivers appealed.

### *Discussion*

The Tollivers raise four issues on appeal, which we will address in turn.

### 1. *Cancellation Versus Rescission*

The Tollivers first argue that, by re-labeling Scottsdale's claim as seeking "cancellation" rather than "rescission," Scottsdale could obtain only prospective relief, namely cancellation of the policy as of the date of the judgment. They contend, therefore, that it was error for the district court to enter judgment against them on their breach of contract claim, which was based upon a loss that pre-dated the judgment. Consequently, they ask this court for judgment in their favor on their breach of contract claim. For this proposition the Tollivers rely on various treatises and one Oklahoma Supreme Court case delineating the distinction between claims for rescission and cancellation. *See F. & M. Drilling Co. v. M. & T. Oil Co.*, 137 P.2d 575, 577 (Okla. 1943) ("'[C]ancellation' . . . means to abrogate so much of [a contract] as remains unperformed . . . and [is] different from 'rescission,' which means to restore the parties to their former position.").

The Tollivers contend that this is a legal issue that we review de novo. But we decline to consider it because the Tollivers did not raise the issue in the district court. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992). Neither party objected when the court determined that Scottsdale's claim was legal rather than equitable and thereafter referred to the remedy as

-5-

cancellation rather than rescission. In making that ruling, the district court was focused on whether to seat only an advisory jury or allow the jury to decide Scottsdale's claim. But it is clear that, regardless of how Scottsdale's claim under § 3609 was labeled, the court and the parties intended that a finding in favor of Scottsdale would preclude a finding in favor of the Tollivers on their breach of contract claim. Scottsdale's action would otherwise be nonsensical, as its purpose in bringing the claim was to avoid paying the Tollivers for their March 29, 2003, fire loss at the Property.

The Tollivers acquiesced in Scottsdale's theory of avoiding the Policy by failing to object to the applicable jury instruction and verdict forms. *See Quigley v. Rosenthal*, 327 F.3d 1044, 1063 (10th Cir. 2003) (holding appeal argument waived where defendant "acquiesced in the plaintiffs' conspiracy theory and the district court's conspiracy instructions"). The instructions directed the jury that "IF AND ONLY IF YOU FIND FOR [THE TOLLIVERS] ON [SCOTTSDALE'S] CLAIM FOR CANCELLATION, YOU MUST ALSO COMPLETE A VERDICT FORM ON [THE TOLLIVERS'] COUNTERCLAIM FOR BREACH OF CONTRACT." Aplt. App., Vol. I at 409. In reviewing the appropriateness of this instruction with both parties' counsel, the district court asked Scottsdale's counsel, "You would agree that . . . if the jury finds for [Scottsdale] on the cancellation claim, there is no breach-of-contract claim to get to?" *Id.*, Vol. II at 761. Scottsdale's counsel replied, "I agree, Your Honor." *Id.* The Tollivers

raised no objection and the jury was instructed accordingly.  Under these circumstances, we have no hesitation in holding that the Tollivers forfeited their argument that the judgment for cancellation terminated the Policy only prospectively.

## 2.  *Return of the Premium*

The Tollivers next argue that the district court erred in denying their motion for judgment as a matter of law because Scottsdale presented no evidence that it returned the premium to them, as required by Oklahoma law.  We review the denial of a motion for judgment as a matter of law de novo.  *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 796 (10th Cir. 2001).  "[A] trial judge may grant a motion for judgment as a matter of law if, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue."  *Id.*; *see also* Fed. R. Civ. P. 50(a)(1).  Likewise, our review of the district court's interpretation of Oklahoma law is de novo.  *Cooper v. Cent. & Sw. Servs.*, 271 F.3d 1247, 1251 (10th Cir. 2001).  We must "ascertain and apply Oklahoma law with the objective that the result obtained in federal court should be the result that would be reached in an Oklahoma court.  In so doing, we must apply the most recent statement of state law by the state's highest court."  *Id.* (citation and quotations omitted).

In support of their argument that Scottsdale was required to present evidence that it returned the premium, the Tollivers rely on *Great American*

*Reserve Insurance Co. of Dallas v. Strain*, in which an insurer defended a claim

under a life insurance policy, asserting that the policy was void. *See* 377 P.2d

583, 586-87 (Okla. 1962). The jury returned a verdict for the insured and the

insurer appealed. *Id.* at 586. The Oklahoma Supreme Court affirmed the

judgment in favor of the insured on the basis that the insurer failed to plead or

prove return or tender of the premium, citing Okla. Stat. tit. 15, § 235. *Strain*,

377 P.2d at 587-88. Section 235 provides, in relevant part:

> Rescission, when not effected by consent, can be accomplished
> only by the use, on the part of the party rescinding, of reasonable
> diligence to comply with the following rules:
>
> . . . .
>
> 2. He must restore to the other party everything of value
> which he has received from him under the contract; or must offer to
> restore the same, upon condition that such party shall do likewise,
> unless the latter is unable, or positively refuses to do so.

§ 235(2).

The court explained in *Strain* that "[t]he purpose of requiring a party

rescinding a contract to restore to the other party everything of value he has

received under it is to make it unnecessary for the party to whom restoration

should be made to bring an action to obtain such restoration." 377 P.2d at 588

(quotation omitted). The court held further that the insurer has the duty to plead

and prove tender, although the failure to plead could be cured by proof at trial.

*Id.* Finally, the court concluded that failure of a party seeking to avoid a contract

-8-

to comply with § 235 is "*fatal* to his cause of action or defense." *Id.* The Tollivers argue that, under the reasoning in *Strain*, the refund principle is likewise applicable to Scottsdale's claim for cancellation of the Policy under § 3609.

In denying the Tollivers' motion, the district court acknowledged that the rule requiring return or tender of the premium applies in equitable claims for rescission. But the court held that it was inapplicable in a legal claim for cancellation under § 3609, noting that the Oklahoma Supreme Court has not applied the refund principle in this context. Scottsdale argues on appeal that the district court's conclusion was correct, contending that § 3609 should not be rewritten to include a refund/tender requirement.

We conclude that the district court erred in holding that the refund principle is inapplicable to legal claims under § 3609. While the Oklahoma Supreme Court has not specifically applied it in this context, and § 3609 itself does not specify that refund or tender is necessary to avoid a policy under that section, the court held in *Strain* that § 235 controls "with equal force and effect, whether the action or defense be at law or in equity," stating that "[o]ne will not be permitted to repudiate his contract and retain the benefits which he has derived from it." 377 P.2d at 588. Therefore, we conclude that the Oklahoma Supreme Court would apply the refund principle to claims under § 3609. Thus, the district court erred in denying the Tollivers' motion for judgment as a matter of law, unless some exception to the rule applies in this case.

Scottsdale argues that two exceptions to the rule are applicable here. First, it contends that tender of the premium was unnecessary because it is clear that any offer of a refund in exchange for cancellation of the Policy would have been refused by the Tollivers. Section 235 "dispenses with the necessity of making the offer if the non-rescinding party positively refuses to return everything of value received by him." *Jones v. Goldberger*, 323 P.2d 344, 349 (Okla. 1958). The Oklahoma Supreme Court stated further that "[w]hen, in an action at law, a tender is necessary to the establishment of any right, it is waived or becomes unnecessary when it is reasonably certain that the offer, if made, would be refused." *Id.* In *National Foundation Life Insurance Co. v. Loftis*, the court held that tender prior to the time of trial was not necessary under the rule laid down in *Jones* "that restoration or an offer of restoration has no application where it is certain that the defendant would not have accepted the tender, had it been made." 425 P.2d 946, 950 (Okla. 1966).

Mrs. Tolliver testified at the trial that she would not have accepted Scottsdale's offer to return the premium, had such an offer been made. But the Tollivers argue that this evidence, which was not admitted in Scottsdale's case in chief, came too late to satisfy Scottsdale's duty to comply with § 235. Scottsdale argues, however, that the Tollivers' tenacious prosecution of their counterclaim, in which they asserted that Scottsdale was contractually obligated to pay their fire loss claim, was sufficient proof that any tender of the premium would have been

-10-

rejected. We agree. In *Loftis*, the court considered the defendant's response to the plaintiff's attempts to rescind an insurance policy and obtain a refund of the premium she had paid, and concluded that "even if the offer had been made by the plaintiff to return the policies to the defendant, and . . . even if the defendant had accepted the policies, it would not have returned to the plaintiff the money she had paid." 425 P.2d at 950. We believe it is equally clear here that, even if Scottsdale had returned the premium to the Tollivers, they would not have agreed to cancellation of the Policy. Thus, tender of the premium was unnecessary.

Scottsdale also argues that it was not required to complete a refund of the premium to the Tollivers before entry of judgment because the district court could have entered a judgment of cancellation conditioned on Scottsdale returning the premium. The Oklahoma Supreme Court approved of such a conditional judgment in *Sneed v. Oklahoma ex rel. Department of Transportation*, 683 P.2d 525, 528-29 (Okla. 1983). On appeal, the Tollivers do not contend that a conditional judgment would be insufficient to satisfy Scottsdale's duty to return the premium. Rather, they argue that Scottsdale did not raise this issue in the district court, and the district court did not enter such a judgment. But in response to the Tollivers' motion, Scottsdale argued that a return of the premium was premature until the jury decided that Scottsdale was entitled to cancellation of the Policy, in which case Scottsdale would refund the premium. And, citing *Sneed*, the district court concluded that it could enter a conditional judgment,

-11-

before it held that such a judgment was unnecessary because the refund principle was inapplicable to claims under § 3609. A conditional judgment would appear to satisfy the purpose of the refund principle "to make it unnecessary for the party to whom restoration should be made to bring an action to obtain such restoration." *Strain*, 377 P.2d at 588 (quotation omitted).

Accordingly, we hold that the district court did not err in denying the Tollivers' motion for judgment as a matter of law, because the evidence showed that tender of the premium would have been refused, and the court could have effected the refund by entering a judgment of cancellation conditioned upon Scottsdale returning the premium to the Tollivers.

### 3. Jury Instructions

The Tollivers next contend that the district court made two errors in instructing the jury on Scottsdale's cancellation claim, requiring reversal of the judgment in favor of Scottsdale and remand for a new trial. They argue that the district court erred in instructing the jury on Scottsdale's burden of proof on the issue of intent to deceive under § 3609, and in failing to instruct the jury that evidence of a return of the premium was a necessary element of Scottsdale's claim.[2]

---

[2] The Tollivers did not request that the district court instruct the jury on return of the premium as an element of Scottsdale's cancellation claim. On appeal, they argue that the court's failure to give that instruction was plainly

(continued...)

-12-

We review de novo whether, as a whole, the district court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards. Even if the district court erred, we will affirm as long as the error is harmless in the context of the trial as a whole.

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) (reviewing claimed error in jury instructions on burden of proof) (citation and quotation omitted).  Again, we review de novo the district court's interpretation of Oklahoma law.  *Cooper*, 271 F.3d at 1251.

The Tollivers argue that Scottsdale was required to prove their intent to deceive by clear and convincing evidence and that the district court erred in instructing the jury that Scottsdale's burden of proof was a preponderance or the greater weight of the evidence.  They rely on *New York Life Insurance Co. v. Kaplan*, in which an insurance company sought to cancel a life insurance policy because of false representations in the application for insurance.  163 P.2d 1009, 1011 (Okla. 1945).  Based upon policy language that provided, "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties," *id.* (quotation omitted), the court held that in order to cancel the policy, the insurer was required to show that the statements were "wilfully false,

---

[2](...continued)
erroneous. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1142 (10th Cir. 2007).  In light of our holding, *infra*, that the district court erred in instructing the jury on the burden of proof, we do not address this issue, as the district court will need to determine the appropriate instruction to be given on retrial.

-13-

fraudulent and misleading and made in bad faith," *id.* The court stated further that wilfulness "must be established by clear, cogent and convincing proof." *Id.* at 1012.

The Tollivers contend that *Kaplan* is controlling on the appropriate burden of proof for intent to deceive under § 3609 because, under Oklahoma law, statutes must be interpreted consistent with the common law. *See* Okla. Stat. tit. 12, § 2 ("The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma[.]"); *Silver v. Slusher*, 770 P.2d 878, 884 (Okla. 1988) ("The common law supplements our statutes. It remains in full force unless it is clearly and expressly modified or abrogated by our constitution or by statute."); *Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 905 n.8 (Okla. 2006) ("The statutes and the common law are to be read together as one harmonious whole."). The Tollivers contend further that application of a clear and convincing standard of proof to the issue of their intent to deceive under § 3609 is also consistent with the burden of proof applicable to fraud claims under Oklahoma law. In *Funnell v. Jones*, the Oklahoma Supreme Court stated, "It is a settled rule in Oklahoma that fraud is never presumed and where a written agreement is attacked on the ground of fraud, that agreement will be upheld unless the allegations of fraud are established by clear and convincing evidence." 737 P.2d 105, 108 (Okla. 1985).

Scottsdale argues that the district court correctly concluded that the insurer's burden of proof on the issue of intent to deceive under § 3609 is a preponderance or the greater weight of the evidence. As Scottsdale notes, this is "the usual standard in a civil case" in Oklahoma. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 913 (Okla. 1982) (holding Oklahoma Supreme Court did not clearly delineate digression from usual standard of proof in bad faith insurance claims). Noting that § 3609 itself is silent regarding the applicable burden of proof, Scottsdale argues that the Oklahoma legislature could have expressly included a clear and convincing standard of proof in § 3609, but apparently chose not to. The parties do not cite, nor have we found, any Oklahoma Supreme Court case setting forth the burden of proof applicable to the issue of intent to deceive under § 3609. While the Oklahoma Supreme Court has stated, with respect to that section, that "an insurer relying on the defense of misrepresentations by the insured in his application bears the burden of pleading and proving the facts necessary to sustain the defense," *Tolliver*, 127 P.3d at 614, it has never held that the applicable standard of proof on that issue is clear and convincing evidence. But *Kaplan* has not been reversed, withdrawn, or modified, and we agree with the Tollivers that *Kaplan* is controlling, unless it is distinguishable from this case.

First, Oklahoma law is clear that statutes, including § 3609, must be construed consistent with the common law. In *Harkrider v. Posey*, the Oklahoma

Supreme Court stated, "Nothing in the statutory text of § 3609 nor in our extant jurisprudence prevents us from interpreting § 3609 in conformity with the general common law of contracts which recognizes the distinction between contracts that are void and those that are merely voidable."  24 P.3d 821, 826 (Okla. 2000).  In *Massachusetts Mutual Life Insurance Co. v. Allen*, the court interpreted § 3609 to require proof of intent to deceive based on common law definitions of "misrepresentation" and "concealment."  *See* 416 P.2d 935, 940 (Okla. 1965). Nothing in § 3609 is plainly inconsistent with a clear and convincing standard of proof, as applied in *Kaplan*.  We discern no reason why the Oklahoma Supreme Court would deviate from its practice of interpreting § 3609 consistent with the common law on the issue presented here:  the standard of proof applicable to the insured's intent to deceive.

        We also conclude that *Kaplan* is not distinguishable from this case.  *Kaplan* held that, in order to cancel a policy, an insurer must show that statements in the application were "wilfully false, fraudulent and misleading and made in bad faith."  163 P.2d at 1011.  Moreover, "[w]ilfulness, that is, design to perpetrate a fraud, by a false representation . . . must be established by clear, cogent, and convincing proof."  *Id.* at 1012.[3]  We see no basis to distinguish the wilful falsity

---

[3]     The Oklahoma Supreme Court has equated this standard of proof with the more commonly used terminology "clear and convincing evidence."  *See Lester v. Sparks*, 583 P.2d 1097, 1101 (Okla. 1978) (applying heightened standard of proof
(continued...)

-16-

requirement, as applied in *Kaplan*, from the intent to deceive requirement under § 3609. Indeed, the Oklahoma Supreme Court has expressly equated the two standards. *N.Y. Life Ins. Co. v. Carroll*, 7 P.2d 440, 443-44 (Okla. 1932) ("Statements to be willfully false, fraudulent, or misleading must be made with actual intent to mislead or deceive another." (quotation omitted)).

The district court reasoned that *Kaplan* is distinguishable from this case because it involved a claim under the policy language, while Scottsdale's claim is statutory. This is a distinction without a difference. In applying the rule that wilful falsity is a necessary element of the insurer's claim, *Kaplan* did not distinguish between statutory[4] and policy-language claims. *See* 163 P.2d at 1011

---

[3](...continued)
to alleged fraud in insurance claim). The *Kaplan* court went on to say that

> [p]roof that establishes the falsity of a material statement and knowledge of its falsity, supported by inference, by the one who made the statement standing alone, clearly and convincingly establishes the intent or design of the perpetrator and would be sufficient in the absence of proof reasonably tending to show the absence of wilfulness to support a judgment of cancellation. Such inference as may arise from such a state of facts is not conclusive but may be rebutted.

163 P.2d at 1012.

[4]     Although the *Kaplan* court did not cite it, at the time that the policy was issued in that case, an Oklahoma statute provided that "the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties: Provided, however, that the company shall not be debarred from proving as a defense to [a] claim that said statements are wilfully false, fraudulent or misleading." Okla. Stat., Ch. 51, Art. 1, § 10519 (1931).

(citing *N.Y. Life Ins. Co. v. Stagg*, 219 P. 362, 364 (Okla. 1923) (policy-language claim); *N.Y. Life Ins. Co. v. Strong*, 65 P.2d 194, 196 (Okla. 1937) (statutory claim)).  Likewise, we see no basis to make such a distinction with respect to *Kaplan* and this case.

Our holding is bolstered by Oklahoma's application of a clear and convincing standard of proof to fraud claims.  In *Johnson v. Board of Governors of Registered Dentists*, the Oklahoma Supreme Court explained that

> [t]he clear-and-convincing standard is employed in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant.  The interest at stake in those cases is deemed to be more substantial than mere loss of money and some jurisdictions reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof.

913 P.2d 1339, 1345 (Okla. 1996) (quotation omitted).  Scottsdale argues that fraud claims are distinguishable because they raise the specter of punitive damages, whereas here the Tollivers face only cancellation of the policy (albeit based upon a potentially reputation-tarnishing claim of intent to deceive).  But Oklahoma applies a clear and convincing standard of proof in actions seeking to avoid a contract based on fraudulent inducement, a claim that is akin to Scottsdale's cancellation claim.  *See Funnell*, 737 P.2d at 108 (stating clear and convincing evidence was necessary in claim to set aside settlement agreement).

Finally, Scottsdale makes several policy arguments why the Oklahoma Supreme Court should not adopt a heightened burden of proof under § 3609.  It

contends that a clear and convincing standard is unnecessary to protect the interests of the insured because an insurer already has to meet the difficult burden under § 3609 of proving that the insured intended to deceive. It also asserts that other jurisdictions that have considered the question of the appropriate burden of proof, in similar, although not identical, circumstances, have rejected the clear and convincing standard. But our duty is to apply the applicable decisions of the Oklahoma Supreme Court. *Cooper*, 271 F.3d at 1251. Having determined that *Kaplan* is controlling, Scottsdale's policy arguments to the contrary are unavailing.

We hold that the district court erred in failing to instruct the jury that Scottsdale was required to prove by clear and convincing evidence the element of intent to deceive under § 3609. We could still affirm the judgment if this error was "harmless in the context of the trial as a whole." *World Wide Ass'n*, 450 F.3d at 1139. "The error is harmless when the erroneous instruction could not have changed the result of the case." *Id.* (quotation omitted). We conclude that the district court's erroneous instruction on the burden on proof was not harmless. There was conflicting evidence regarding whether the Tollivers disclosed their previous claims to their insurance agent, and regarding who was responsible for the omission of that information from the insurance application. Applying the preponderance or greater weight of the evidence standard, the jury found in favor of Scottsdale on this conflicting evidence, but we cannot conclude as a matter of

law that the jury would have found for Scottsdale even under the higher standard

of proof.[5] Therefore, we reverse and remand for a new trial.

### *4. Bad Faith*

The Tollivers' final argument on appeal challenges the district court's grant

of summary judgment in favor of Scottsdale on their bad faith claim. They argue

that there were conflicting facts regarding whether there was a legitimate

coverage dispute at the time Scottsdale denied their claim, and whether

Scottsdale's investigation prior to denying the claim was reasonable. We review

the district court's grant of summary judgment de novo. *Oulds v. Prinicipal Mut.*

*Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). Summary judgment "should be

rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act

in good faith with its insured and [a] violation of this duty gives rise to an action

in tort for which consequential and, in a proper case, punitive, damages may be

---

[5]     In fact, the district court denied Scottsdale's motion for directed verdict on its cancellation claim after the close of the evidence, applying a clear and convincing standard of proof to the issue of intent to deceive. At that time, the district court had not yet determined that the standard was instead a preponderance or the greater weight of the evidence. In denying Scottsdale's motion, the court observed that the evidence was not so overwhelming that a reasonable person would be unable to find a lack of intent to deceive.

sought." *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). However, the fact that an insurer chooses to litigate a claim, but ultimately does not prevail, is not in itself sufficient to establish a breach of the insurer's duty and liability in tort. *Id.* at 904-05. Instead, there must be "a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.* at 905. "Thus, in order to establish such a claim, the insured must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds*, 6 F.3d at 1436. In deciding a motion for summary judgment on a bad faith claim

> the trial court must first determine, under the facts of the particular case and as a matter of law, whether [the] insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed. To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims.

*Id.* at 1436-37 (citations and quotation omitted). The key question here is whether there was a legitimate dispute as to coverage when Scottsdale denied the Tollivers' claim. *See id.* at 1436.

The Tollivers first contend that Scottsdale could not have had a reasonable good faith belief that they intended to deceive because, at the time it denied the claim, it was not aware of the requirement to prove intent to deceive under

-21-

§ 3609, as evidenced by its later position in the litigation disputing that requirement. They emphasize that the insurer's good faith must be judged at the time the claim was denied. *See Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991) ("The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim."). But their argument ignores Scottsdale's stated basis for denying the claim. *See id.* at 1114 (holding information is relevant if insurer relied upon it in refusing payment). In its letter to the Tollivers, Scottsdale relied upon Policy provisions concerning concealment of fraud, which addressed the effect on the Tollivers' coverage under the Policy of intentional concealment or misrepresentation of material facts, fraudulent conduct, or false statements. *See* Aplt. App., Vol. I at 208-10. That Scottsdale apparently later elected to pursue its claim for avoidance of the policy under § 3609, and disputed the proof required under that section, is not relevant to its stated basis for refusing payment: the Tollivers' omission of information from their application with intent to deceive, in violation of the Policy terms.

The Tollivers next contend that, at the time Scottsdale denied their claim, it had no legitimate basis to refuse payment because it had no evidence upon which it could reasonably conclude that they intended to deceive when they omitted information about their previous claims from the application for insurance. Scottsdale counters that it reasonably disputed the Tollivers' claim after discovering over $200,000 in previous losses, including two total-loss fire claims

-22-

and a substantial theft loss, that were not disclosed in their application. Scottsdale observed that the application requested disclosure of all claims during the preceding three years, and in signing it, Mrs. Tolliver attested that the information she provided was "true, complete and correct to the best of [her] knowledge and belief." *Id.* at 107. Yet she disclosed only a less-significant $5,000 hail damage claim. Scottsdale contends that the omission of such substantial losses from the application provided reasonable grounds for it to resist the Tollivers' claim. We agree. Knowledge and intention in this context may not be susceptible to direct proof and may instead be inferred from the circumstances. *See Carroll*, 7 P.2d at 443. Thus, in order to avoid summary judgment, the Tollivers were required to present evidence that Scottsdale's inference was unreasonable. They presented no such evidence.[6]

Finally, the Tollivers assert that the district court erred in granting summary judgment because there was evidence that Scottsdale's investigation of their claim was unreasonable. They rely on their expert's opinion that "[a] simple investigation process of interviewing the agent, the insured, and the underwriter would have quickly shown the claim handlers that there was no intent on the part of the insureds to deceive Scottsdale." Aplt. App., Vol. I at 213-14. Under

---

[6] The Tollivers argue that the district court ignored their expert evidence, but their expert provided no opinion on the reasonableness of Scottsdale's inference of an intent to deceive based upon the nature and extent of the undisclosed losses.

-23-

Oklahoma law, "[w]hether an insurer's actions reasonably give rise to an inference of bad faith must be determined in light of all facts known *or knowable* concerning the claim." *Oulds*, 6 F.3d at 1439 (emphasis added, quotation omitted). Although "[t]he investigation of a claim may in some circumstances permit one to reasonably conclude that the insurer has acted in bad faith," *id.* at 1442, the insured must show that the insurer overlooked material facts or that a more thorough investigation would have resolved the coverage dispute in favor of the insured, *see id.*

The Tollivers' expert stated that a more thorough investigation would have revealed that previous losses had been disclosed in a prior insurance application that the Tollivers submitted to a different insurance company, and that the omission of that same disclosure from their Scottsdale application was simply the result of a clerical error by the Tollivers' agent. But the prior application referenced by the expert stated only, "[Insured] has had some claims on Rental Prop[erty] that were not personal." Aplt. App., Vol. I at 147. Thus, further investigation of that prior application by Scottsdale would not have revealed a disclosure of the specific claims at issue.

Moreover, the Tollivers' expert failed to address that further investigation would have revealed only that Mrs. Tolliver and her insurance agent had conflicting stories regarding what previous losses she had disclosed to him. *See Oulds*, 6 F.3d at 1441 n.4 (noting further investigation would not have

-24-

resolved whether insured or agent was telling the truth). If the agent's story was truthful, Scottsdale almost certainly had a valid defense to the Tollivers' claim. *See id.* at 1439. There is no basis to conclude that Scottsdale actually knew, or should have known by conducting a more thorough investigation, that the Tollivers' application for insurance did not contain intentional misrepresentations. Thus, in this case there is no "evidence permitt[ing] a conclusion that a reasonable insurer, had it been in possession of the facts that a proper investigation would have revealed, would not have denied coverage." *Id.* at 1442.

At the time Scottsdale denied the Tollivers' claim, facts were in dispute as to whether or not they were entitled to coverage under the Policy, and a reasonable jury could have found in favor of Scottsdale based on all facts Scottsdale knew or should have known. This is "strong evidence that a dispute is 'legitimate.'" *Id.* "It cannot be said as it was in *Christian* that it was apparent that [Scottsdale] never had a valid defense to [the Tollivers'] claim." *Id.* at 1440 (quotation omitted). Thus, Scottsdale had the right to deny their claim and to have the legitimate dispute determined in a judicial forum. Under Oklahoma law, there is no disputed material fact issue concerning Scottsdale's bad faith and the district court did not err in granting summary judgment. *See id.* at 1445. We therefore affirm the district court's grant of summary judgment in favor of Scottsdale on the Tollivers' bad faith claim.

## *Conclusion*

The district court's judgment in favor of Scottsdale Insurance Company on its claim for cancellation, and against Michael S. Tolliver and Sandra L. Tolliver on their counterclaim for breach of contract, is REVERSED and REMANDED for a new trial in accord with this order and judgment. The district court's grant of summary judgment in favor of Scottsdale on the Tollivers' bad faith claim is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge